# MARGHERITA DEL CORE *v.* MOHICAN HISTORIC HOUSING ASSOCIATES
## (AC 24058)

Lavery, C. J., and Bishop and Peters, Js.

Argued December 2, 2003—officially released January 13, 2004

*Michael D. Colonese,* with whom, on the brief, was *Dana M. Horton,* for the appellant (plaintiff).

*John B. Farley*, with whom was *Kevin J. Greene*, for the appellee (defendant).

PETERS, J. This case arises out of a man's burial in a pauper's grave because his sister did not hear of his death soon enough to make more suitable arrangements. The brother's landlord, who knew that the sister was her brother's next of kin, did not notify her of the death for several months. The principal issue before us is whether the landlord owed the sister a duty of prompt notification. The trial court, concluding that the landlord did not have such a duty, granted the defendant's motion to strike the plaintiff's complaint. We agree and affirm the judgment in favor of the defendant.

The plaintiff, Margherita Del Core, filed a four count complaint charging the defendant, Mohican Historic Housing Associates, with wrongful interference with her right to possession and disposition of the remains of her deceased brother, Anthony Caruso. In response, the defendant filed a motion to strike the complaint on the grounds that it failed to state a cognizable legal duty and failed to allege facts to support a claim of intentional infliction of emotional distress.

The trial court granted the defendant's motion to strike the complaint.[1] "For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted." (Internal quotation marks omitted.) *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 476, 823 A.2d 1202 (2003).

Because the plaintiff's appeal raises the same claims of law that were at issue at trial, our review of these

---

[1] Although the court rendered judgment only on the first three counts stated in the plaintiff's complaint, the parties subsequently stipulated to the dismissal of the remaining count.

claims is plenary. See *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 64 Conn. App. 134, 137, 779 A.2d 817 (2001), appeal dismissed, 260 Conn. 180, 799 A.2d 294 (2002).

I

## COUNT ONE: NEGLIGENCE

The first count in the plaintiff's complaint alleged that the defendant negligently had interfered with her right to possession of the body of her brother. The defendant maintained, and the trial court concluded, that this count did not state an actionable claim of negligence. We agree.

For present purposes, the underlying facts are undisputed. The brother was one of the defendant's tenants from 1998 until his death at Yale-New Haven Hospital on July 24, 2001. Although the defendant had been informed that the plaintiff was the brother's next of kin,[2] it did not respond to efforts by the hospital to obtain that information after the brother's death. In the absence of that information, the hospital arranged for the brother's burial in a pauper's grave in Hamden. Four months later, the defendant informed the plaintiff of the death.

In support of its motion to strike the first count, the defendant argued that these alleged facts do not support a claim for negligence. The plaintiff's allegations of negligence, in its view, were fatally flawed because they failed to establish the existence of any legal relationship that would have imposed on the defendant a duty of care to the plaintiff. In opposition, the plaintiff argued that the defendant had a duty of timely notification because it was aware of her status as next of kin. It was foreseeable, in her view, that a delay in notification

---

[2] The complaint did not allege that the defendant knew or should have known the plaintiff's address or telephone number.

would prevent her from making arrangements for the proper burial of her brother.

The trial court agreed with the defendant. The court accepted the plaintiff's proposition that the facts the defendant allegedly knew might have made it foreseeable that the plaintiff would have difficulty in caring for her deceased brother's body.[3] Nonetheless, the court held that those facts did not establish that the defendant had a duty to notify the plaintiff of her brother's death. It stressed the absence of Connecticut precedents recognizing a cause of action for negligent interference with the possession and disposition of a dead body.

In this appeal, the plaintiff renews her claim that, under the circumstances she has alleged, the defendant should have anticipated the harm that would likely flow from its negligent failure to notify her promptly of her brother's death. She acknowledges that she has neither a contractual nor a statutory claim against the defendant.[4] She recognizes that, to prevail on a claim of common-law negligence, she must establish duty as well as foreseeability. See *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 614–16, 783 A.2d 462 (2001).

The challenge for the plaintiff, therefore, is to establish that the defendant had a legal duty to protect her right to provide a decent burial for her deceased brother. The test for the existence of a legal duty is twofold. It entails "(1) a determination of whether an ordinary person in the defendant's position, knowing

---

[3] We need not pursue that issue further in light of our conclusion that the plaintiff failed to establish that the defendant owed her a duty to notify. See *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 529, 832 A.2d 1180 (2003).

[4] Indeed, as the defendant observes, the most closely analogous statute is General Statutes § 47a-11d, which gives a landlord the *option* of notifying the next of kin upon the death of a tenant if the landlord wishes to expedite repossession of the leasehold. Perhaps it was the existence of this option that led the defendant to notify the plaintiff when it did so.

what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 250, 765 A.2d 505 (2001).

Focusing on a public policy analysis, the plaintiff maintains that she has a common-law claim against a person who negligently prevents the proper interment of a dead body. The importance of her claim is undeniable. "Few things are more cherished, respected, or sacred than the right to bury our dead. There is a cognizable and compensable interest . . . in the comfort of knowing that the deceased has been given a comfortable and dignified resting place." (Internal quotation marks omitted.) *Vogelaar* v. *United States*, 665 F. Sup. 1295, 1306 (E.D. Mich. 1987).

To implement the public policy of respect for the right to bury one's dead, the plaintiff urges us to adopt § 868 of the Restatement (Second) of Torts. Section 868 provides: "One who intentionally, recklessly or *negligently* removes, withholds, mutilates or operates upon the body of a dead person or *prevents its proper interment or cremation* is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." (Emphasis added.) 4 Restatement (Second), Torts § 868, p. 274 (1979). The trial court declined to adopt this provision.[5]

In our view, however, Connecticut should recognize a claim for negligent interference with the right of a

---

[5] The defendant has cited several cases holding that a defendant had no duty to provide prompt notification of a death to the next of kin.

family member to control the proper burial of a deceased.[6] Recognition of this principle, however, will not provide a remedy for *this* plaintiff unless she can establish that *this* defendant owed her a duty to facilitate her right to bury her brother promptly.

The plaintiff has failed to allege facts that would suffice to show that the defendant had *any* duty to her. The cases on which she relies share one overarching distinguishing fact, namely, that each of the defendants, at a relevant time, had physical custody of the body of the deceased person. For example, in *Mackey* v. *United States*, 8 F.3d 826, 827 (D.C. Cir. 1993), the defendants were a hospital and a custodial mental health institution. In *Larson* v. *Chase*, 47 Minn. 307, 308, 50 N.W. 238 (1891), the defendant was the custodian of a dead body. In *Estate of Finn* v. *New York*, 76 Misc. 2d 388, 389–90, 350 N.Y.S.2d 552 (1973), the defendant was the city hospital where the deceased died. In *Vogelaar* v. *United States*, supra, 665 F. Sup. 1297, the defendant was the United States government, which had responsibility for the identification of the remains of a soldier who died in Vietnam.

Due respect for the burial rights of family members may reasonably be held to impose a duty of notification on those who have the right to control the body of the deceased. There is, however, an unbridgeable gap between those cases and the claim, in this case, that an owner of rental property owes such a duty to its tenants.

It bears emphasis that the *only* alleged relationship between the defendant and the deceased person was a landlord-tenant relationship. The plaintiff has not alleged that the defendant ever assumed *any* responsibility for her brother's welfare. Specifically, she has

---

[6] We need not decide, in this case, how broadly the class of family members should be defined. For today, it is sufficient that a sister unquestionably is a family member.

not alleged that the defendant ever exercised custodial control over her brother's body or that it had some special responsibility for its tenants, such as a convalescent home might have.

Under the circumstances as pleaded, we cannot discern a public policy basis for imposing on this defendant a common-law duty to notify the plaintiff of her brother's death. As the defendant aptly notes, if it were to be held liable, so would a neighbor who reads an obituary or a fellow worker or an employer. We are not persuaded that the plaintiff's unfortunate inability to arrange for the burial of her brother is a sufficient basis for charging this defendant with negligence.

## II

### COUNT TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In the second count of her complaint, the plaintiff claimed that the defendant caused her to suffer severe mental and physical anguish and emotional distress by intentionally interfering with her right to bury her brother. As in count one, the alleged interference was the failure to notify the plaintiff, in a timely fashion, of her brother's death.

The trial court characterized this count as one for intentional infliction of emotional distress. It held the count was not actionable as pleaded because the plaintiff had failed to allege any facts to show that the defendant had engaged in extreme and outrageous conduct. See *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).

On appeal, the plaintiff does not dispute the proposition that a claim for intentional infliction of emotional distress requires allegations that the court found missing from her complaint. She argues, instead, that the missing allegations are irrelevant because count two

rested not on a claim of infliction of emotional distress but on a claim that the defendant had caused her to suffer severe mental and physical anguish.

Like the trial court, we think that this is a distinction without a difference. Even if we were to accept the plaintiff's characterization of count two, we would nonetheless agree with the court's bottom line. The plaintiff has failed to allege *any* basis for her claim that the defendant's alleged conduct constituted the intentional infliction of mental or physical anguish. She has not cited a single case to support her claim.

### III

### COUNT THREE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In the third count of her complaint, the plaintiff claimed that the defendant negligently caused her to suffer emotional distress by failing to notify her of her brother's death. She alleged no additional facts in support of this claim.

The trial court struck the third count. It noted that one facet of a claim for negligent infliction of emotional distress is a showing of negligence. Having previously ruled that the allegations contained in count one were insufficient to establish negligence, the court concluded that the plaintiff, for the same reasons, could not prevail on this count.

The plaintiff does not challenge the court's analysis of the law of negligent infliction of emotional distress. The court's analysis is fully supported both by logic and by our case law. See, e.g., *Perodeau* v. *Hartford*, 259 Conn. 729, 754–55, 792 A.2d 752 (2002); *Roach* v. *Ivari International Centers, Inc.*, 77 Conn. App. 93, 102–103, 822 A.2d 316 (2003).

The plaintiff's disagreement with the court's ruling on count three devolves, therefore, into a reargument of her claim of negligence in count one. We need not restate here why we disagree with her claim that the defendant negligently impaired her right to make proper burial arrangements for her brother.

We conclude, therefore, that each of the three counts of the plaintiff's complaint fails to establish an actionable claim against the defendant. We sympathize with the plaintiff's dismay at her brother's burial in a pauper's grave. Nonetheless, the defendant was, for legal purposes, a bystander in the events that led to that unfortunate outcome. Because the defendant owed the plaintiff no duty to prevent her brother's unsuitable burial, the defendant bears no responsibility either for her inability to care for her brother's body or for her resultant mental and physical anguish.

The judgment is affirmed.

In this opinion the other judges concurred.